IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**MANES' PHARMACY, INC.**                                                                                    **PLAINTIFF**

V.                                    **CASE NO. 2:22-CV-2186**

**AMERISOURCEBERGEN DRUG CORPORATION**                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-Motions for Summary Judgment (Docs. 61 and 65), and their briefs, responses, replies, and statements of facts in support of or opposition to those motions (Docs. 62–63, 66, 78–80, 82, 87).  For the reasons given below, Plaintiff Manes' Pharmacy, Inc's ("Manes") Motion for Summary Judgment (Doc. 65) is **DENIED**, and Defendant AmerisourceBergen Drug Corporation's ("ABDC") Motion for Summary Judgment (Doc. 61) is **GRANTED**.

### I.  BACKGROUND

As the Court recounted in previous orders:

> This dispute arises between a pharmacy and the pharmacy's wholesale distributor of, among other products, controlled substances.  Manes is a pharmacy that has served the local Van Buren, Arkansas community for nearly 40 years.  [ABDC] is a wholesale distributor of pharmaceutical products, including controlled substances.  Manes alleges that it has purchased pharmaceuticals from [ABDC] for over 15 years.  Manes purchases many different medications from [ABDC]'s facility in Tulsa, Oklahoma.  According to [ABDC], the wholesaler sells Manes both controlled and non-controlled substances.
>
> . . . [T]his dispute . . . arise[s] from [ABDC]'s decision to restrict its sale of controlled substances and listed chemicals to Manes.[1]  In a November 2, 2022 letter memorializing that decision, [ABDC] explained that members of

---

[1] For convenience, controlled substances and listed chemicals will collectively be referred to as "controlled substances" throughout this Opinion and Order.

1

>its Controlled Substance Monitoring Program reviewed Manes' dispensing practices and identified several "red flags." Specifically, [ABDC] was concerned that Manes: (1) dispensed controlled substances for prescriptions from family/general practitioners; (2) dispensed combinations of opioids and benzodiazepines; (3) dispensed multiple controlled substances in the same therapeutic class concurrently; and (4) dispensed controlled substances [prescribed by] a dentist in large quantities. Manes was given the opportunity to dispute or respond to these allegations in writing.
>
>Manes responded to the letter and indicated that it would change its dispensing practices to comply with [ABDC]'s letter. Manes' owner also requested reconsideration of [ABDC]'s decision to cease sales, stating "I am willing to do what ever I have to do to avoid suspension of sales of controlled substances." [ABDC] acknowledged receipt of the reconsideration request the same day. Six days later, [ABDC] sent a second letter stating that Manes' letter did not adequately address its concerns. [ABDC] indicated that its restriction of controlled substances sales to Manes would go into effect on November 30, 2022.

(Doc. 38, pp. 1–2) (internal citations and quotation marks omitted).

Manes sued ABDC in Arkansas state court on December 2, 2022 (Doc. 4), and contemporaneously filed a motion for a temporary restraining order and preliminary injunction (Doc. 5), seeking an order requiring ABDC to continue its sale of controlled substances to Manes. ABDC removed the case to this Court on December 6, 2022. *See* Doc. 2. After a multi-day evidentiary hearing, this Court entered an Order (Doc. 38) denying Manes' motion for injunctive relief. Discovery then proceeded without incident and has now concluded.

Manes' operative complaint brings claims against ABDC for breach of contract, tortious interference with business expectancies, defamation, and compelled self-defamation, and seeks both compensatory and punitive damages. *See* Doc. 53, ¶¶ 86–180. ABDC has filed a motion for summary judgment, seeking dismissal of all these claims. Manes has also filed a motion for partial summary judgment, asking this Court to

find ABDC liable to Manes as a matter of law on all of its claims except for self-defamation. Both motions have been fully briefed and are now ripe for decision.

## II.  LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).  The same standard applies where, as here, the parties have filed cross-motions for summary judgment.  When no material facts are in dispute, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case."  *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978).  Each motion should be reviewed in its own right, however, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record."  *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998).  In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party."  *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.  DISCUSSION

As noted above, Manes' operative complaint brings claims against ABDC for breach of contract, tortious interference with business expectancies, defamation, and

compelled self-defamation, and seeks both compensatory and punitive damages. *See* Doc. 53, ¶¶ 86–180. The Court will discuss these claims in that same sequence below.

### A. Breach of Contract

First, ABDC is entitled to summary judgment on Manes' claim for breach of contract, because the contract here provides ABDC with complete discretion on whether to sell controlled substances to Manes. Specifically, the relevant clause states:

> Notwithstanding any purchase commitments in this Agreement or the Member Agreements, ABDC has no obligation to sell controlled substances or listed chemicals to Customers or Members and, in addition, ABDC may restrict, prevent, and/or reject orders from Customers or Members of controlled substances or listed chemicals as a result of any findings of the controlled substances monitoring program.

(Doc. 61-26, p. 15, § 7(A)). In other words, and simply put, the contract imposes no duty on ABDC to sell controlled substances to Manes if it does not wish to do so. Obviously, a party to a contract cannot breach a duty which does not exist. *Cf. Larry Hobbs Farm Equipment, Inc. v. CNH Am., LLC*, 2008 WL 3931323, at *3 (E.D. Ark. Aug. 22, 2008) ("[T]ermination without good cause is not a breach of the contract because the . . . Agreement allowed for termination without good cause.").

Perhaps in anticipation of this fundamental problem, Manes' operative complaint alleges three additional ways in which ABDC breached their contract:

> a. Failing to communicate updates in its policies and procedure[s] to Plaintiff;
> b. Failing to communicate its concerns in a manner that would allow Plaintiff to cure any potential defects in Plaintiff's business; [and]
> c. Failing to use [Personal Health Information] to allow Plaintiff to cure Defendant's concerns[.]

(Doc. 53, ¶ 103). But Manes' contract claim does not fare any better under any of these theories.

First, with respect to communicating updates in ABDC's policies and procedures, the governing clause provides that:

> ABDC may, from time to time, develop policies and procedures relative to new or existing services offered to customers, on an interim or as-needed basis. If ABDC develops such policies or procedures or changes current ones, ABDC will provide Member with written notice at least thirty (30) days before such changes are effective.

(Doc. 61-26, p. 34, § 5). The updated procedure which Manes alleges was not timely communicated to it is found within ABDC's Diversion Control Program Policies and Procedures at DCP SOP-12.3.10, entitled "Ongoing Monitoring Activities." *See* Doc. 61-23. This procedure's self-described purpose is "[t]o establish the process to continually monitor customer trends and ordering patterns of controlled substances and listed chemicals . . . by [ABDC] customers to further detect and prevent diversion into other than legitimate medical, scientific, and industrial channels." *Id.* at 1, § 1. To that end, the updated policy is for ABDC's Controlled Substance Monitoring Program team to "carry out activities that are designed to supplement its Order Monitoring Program . . ., which is the system it has created for identifying and investigating *Orders of Interest* and for reporting *Suspicious Orders* to the DEA, as a means of further reducing the risk of diversion." *See id.*, § 2.1 (emphasis in original). The policy goes on to specify the various methods and processes by which this monitoring program will be conducted. *See generally id.* But by the contract's own language, ABDC had no duty to provide Manes with notice of this policy update, because the update in question was not to procedures for providing "new or existing services . . . to customers"; rather, it was to procedures for monitoring customers' purchasing activities.

5

Second, with respect to whether ABDC communicated its concerns in a manner that would allow Manes to cure any potential defects in Manes' business—Manes has not identified any contractual provision that imposes any such duty on ABDC. In fact, as already described above, the contract gives ABDC essentially unfettered discretion on whether to sell controlled substances to Manes at all.

And third, with respect to whether ABDC failed to use Personal Health Information ("PHI") to allow Manes to cure ABDC's concerns—here too, ABDC had no such contractual duty. The clause relied upon by Manes for this claim states:

> Each Customer represents to ABDC that it is a HIPAA "**business associate**" of Member and Customer and Member have entered into a valid business associate agreement that is currently in effect. Members must authorize and direct ABDC, in ABDC's capacity as a business associate, to have Customers share Dispensing Data and personal health information ("**PHI**") with ABDC, to the extent such PHI disclosures would be permissible and for purposes of such Member's "payment" or "health care operations." Members will notify ABDC if they terminate a business associate agreement with Customers during the Term and Customers will promptly discontinue disclosure of Dispensing Data and PHI.

(Doc. 61-26, p. 8, § 4.C.2) (emphasis in original). As can be seen, this clause imposes a duty on *Manes* to "authorize and direct ABDC . . . to have Customers share Dispensing Data and personal health information . . . with ABDC . . . for purposes of [Manes]' 'payment' or 'health care operations.'" *Id.* It does not impose any duty on ABDC to use customers' PHI for other purposes such as performing investigations under its Controlled Substance Monitoring Program.

Finally, Manes also argues that ABDC breached the implied duty of good faith and fair dealing which accompanies contracts under Arkansas law. As the Court previously noted in its Order denying Manes' request for preliminary injunctive relief, Arkansas "does not recognize a separate tort cause of action for breach of [the] implied covenants" of

good faith and fair dealing, *see West Memphis Adolescent Residential, LLC v. Compton*, 2010 Ark. App. 450, at *9, 374 S.W.3d 922, 927, but these duties can implicate claims for breach of contract, *see id.* at *5–*7, 374 S.W.3d at 925–26.  On this point, the Arkansas Supreme Court has explained that there also is no "separate contract claim for breach of the duty of good faith and fair dealing," but that rather a breach of this duty "remains nothing more than evidence of a possible breach of a contract between parties."  *See Ark. Rsch. Med. Testing, LLC v. Osborne*, 2011 Ark. 158, at *6, 2011 WL 1423993, at **3.  But here, as discussed above, ABDC had no underlying contractual duty to continue selling controlled substances to Manes, to inform Manes of changes to its Order Monitoring Program, to give Manes the opportunity to change its prescription-filling practices, or to use Manes' customers' PHI to cure ABDC's concerns.  Thus, even if ABDC did breach its duty of good faith and fair dealing, that would make no difference here because there simply is no underlying contractual duty for which this could be evidence of having been breached.  Accordingly, ABDC is entitled to summary judgment on Manes' claim for breach of contract, which will be dismissed with prejudice.

### B.  Tortious Interference with Business Expectancies

Manes has also brought a claim against ABDC for tortious interference with Manes' business expectancies.  The allegation here is that ABDC knew Manes had legitimate business expectancies with customers to whom Manes sells controlled substances, and with other wholesale distributors from whom Manes purchases controlled substances; and that ABDC's decision to terminate sales of controlled substances to Manes, and its conduct surrounding that decision, caused Manes to lose business from many of those customers and distributors.  To prevail on this claim, Manes must prove: (1) the existence

of a valid business expectancy; (2) knowledge by ABDC of this business expectancy; (3) intentional interference by ABDC inducing or causing a termination of the relationship or expectancy; and (4) resultant damage to Manes.  *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 444, 47 S.W.3d 866, 875 (2001).  Additionally, Manes must prove that ABDC's conduct in this regard was "improper."  *Id.* at 444–45, 47 S.W.3d at 875.

Here, there is no material factual dispute as to whether ABDC's conduct was improper.  Manes argues that ABDC's actions were improper because it "published false statements as to the reasoning behind [Manes]' restriction," and that ABDC's "true interest in restricting the sale of controlled substances to [Manes] was because [Manes] was too large of a regulatory risk for [ABDC]."  *See* Doc. 66, pp. 15–16.  But the undisputed evidence shows that in fact ABDC explicitly informed Manes of this very interest in its November 2, 2022 letter informing Manes of its decision to restrict sales of controlled substances.  That letter stated ABDC had "concerns regarding the controlled substance sales which may place both [ABDC] and [Manes] at risk for regulatory action by state and/or federal agencies."  *See* Doc. 61-18, p. 2.  It then went on to specifically list four "red flags" in Manes' dispensing practices that ABDC's Controlled Substances Monitoring Program had identified, and explained to Manes the process by which it could request that ABDC reconsider this decision.  *See id.*  There simply is no evidence in the record that ABDC concealed its interest in mitigating regulatory risk from Manes.  And Arkansas caselaw is clear that "[s]o long as a defendant does not employ improper means, a defendant's own economic interest provides sufficient justification for an alleged tortious interference."  *Farm Credit Midsouth, PCA v. Bollinger*, 2018 Ark. App. 224, at *11, 548

8

S.W.3d 164, 173. Therefore, ABDC is entitled to summary judgment on Manes' claim for tortious business interference, which will be dismissed with prejudice.[2]

### C. Defamation and Compelled Self-Defamation

Turning now to Manes' claim for defamation: Manes alleges that ABDC defamed it by publishing the November 2, 2022 letter that informed Manes of ABDC's decision to stop selling it controlled substances. Specifically, there are two publications at issue here: (1) a November 30, 2022 email that ABDC sent to the Arkansas Attorney General ("AG") and the federal Drug Enforcement Agency ("DEA"), which contained an excerpt from the November 2 letter listing the four "red flags" it identified in Manes' dispensing practices; and (2) ABDC's provision on November 22, 2022 of a copy of the November 2 letter to the Arkansas Board of Pharmacy ("BOP"). The problem here for Manes' claim is that the undisputed evidence shows that ABDC was legally obligated to make these disclosures. ABDC was required by a court-ordered injunction to inform the state of Arkansas, "in a uniform format," within five days whenever it terminates a customer's eligibility to receive controlled substances from it. *See* Doc. 61-15, p. 11, § XIV.B. The November 30 email to the AG and the DEA expressly states that it was being sent "[i]n accordance with the requirements outlined in" that injunction, and notes that Manes' "termination went into effect on November 30, 2022," the same day the email was sent. *See* Doc. 61-8. And

---

[2] The only "false" statement that Manes has identified in the November 2 letter is a statement that one of the "red flags" was that Manes had dispensed "controlled substances *to* a dentist in large quantities," *see* 61-18, p. 2 (emphasis added), when in fact it should have stated that Manes dispensed controlled substances *prescribed by* a dentist in large quantities. The author of the letter testified that this was a typographical error, *see* Doc. 61-29, pp. 45–46 (internally numbered 173:20–174:12), and Manes has not provided any evidence rebutting or undermining that proposition or otherwise creating any material dispute of fact as to whether this constituted improper conduct on the part of ABDC.

9

the November 22 provision of the November 2 letter to the BOP was made in response to a subpoena that the BOP issued to ABDC.  *See* Doc. 61-6.  Arkansas law provides a "qualified privilege" to protect statements that are "made in good faith upon any subject-matter in which the person making the communication has an interest *or in reference to which he has a duty*, and to a person having a corresponding interest or duty, although it contains matters which, without such privilege, would be actionable."  *Singer v. Harris*, 2016 WL 10489850, at *6 (E.D. Ark. July 13, 2016) (quoting *Navorro-Monzo v. Hughes*, 763 S.W.2d 635, 638 (Ark. 1989)) (emphasis added).

Importantly, the initial determination of whether the privilege exists is a matter of law.  *See Minor v. Failla*, 329 Ark. 274, 282, 946 S.W.2d 954, 958 (1997), *overruled on other grounds by United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998).  Then, once the privilege is established, "the burden shifts to the plaintiff to prove the privilege has been abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said."  *Ikani v. Bennett*, 284 Ark. 409, 413, 682 S.W.2d 747, 749 (1985).  Here, the Court finds that ABDC's publications of its November 2 letter to Manes were privileged because, again, the undisputed evidence shows they were made in good faith pursuant to a legal duty.  And because Manes has not produced any evidence that these publications were excessive, for an improper purpose, or with any lack of belief or grounds for their contents, ABDC is entitled to summary judgment on Manes' claim for defamation, which will be dismissed with prejudice.

As for Manes' claim for compelled self-defamation: there is no such cause of action in Arkansas.  *See O'Connor v. Clorox Co.*, 14 Fed. Appx. 745, 746 (8th Cir. 2001).  Manes

asks this Court to find that the Arkansas Supreme Court would recognize such a claim if asked, but Manes has not provided this Court with any case in which the Arkansas Supreme Court has implied or hinted that it would do so. Absent any such authority, this Court has no basis for finding the Arkansas Supreme Court would recognize this cause of action. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (2010). And without such a finding, Manes cannot proceed on that claim, which, accordingly, will be dismissed.

## IV.  CONCLUSION

Finally, since all of Manes' claims are being dismissed, it obviously is not entitled to recover the compensatory and punitive damages requested in its complaint. And since ABDC is entitled to summary judgment on all claims when the record is viewed in the light most favorable to Manes, it logically follows that Manes cannot prevail on its own motion when the record is viewed in the light most favorable to ABDC.

**IT IS THEREFORE ORDERED** that Plaintiff Manes' Pharmacy, Inc's Motion for Summary Judgment (Doc. 65) is **DENIED**, and Defendant AmerisourceBergen Drug Corporation's Motion for Summary Judgment (Doc. 61) is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Judgment will be entered contemporaneously with this Order.

**IT IS SO ORDERED** on this 7th day of March, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE